# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12560 (KJC)<br><br>(Jointly Administered) |
| WOODBRIDGE GROUP OF COMPANIES, LLC, and WOODBRIDGE STRUCTURED FUNDING, LLC,[2]<br><br>Plaintiffs,<br><br>v.<br><br>KAILA ALANA LOYOLA,<br><br>Defendant. | Adv. Proc. No. _____ |

**COMPLAINT OBJECTING TO CLAIM NO. 8811 OF KAILA ALANA LOYOLA AND FOR EQUITABLE SUBORDINATION AS APPROPRIATE**

The Woodbridge Group of Companies, LLC, and Woodbridge Structured Funding, LLC, debtors and debtors in possession ("Plaintiffs") hereby allege for their Complaint as follows:

---

[1]  The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423.  Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein.  A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at www.gardencitygroup.com/cases/WGC, or by contacting the undersigned counsel for the Debtors.

[2]  Claimant (defined below) filed her Claim (also defined below) solely against Woodbridge Group of Companies, LLC.  However, a prepetition state court complaint she filed in California named both Woodbridge Group of Companies, LLC, and Woodbridge Structured Funding, LLC.  Out of an abundance of caution both debtors are therefore named as plaintiffs in this complaint.

01:23588476.3

## NATURE OF THE ACTION

1. At least since August 2012 until shortly before it sought bankruptcy protection, Plaintiffs and their many hundreds of debtor affiliates (together with the Plaintiffs, the "Debtors") were operated by their founder and principal, Robert Shapiro ("Shapiro"), as a Ponzi scheme. As part of this fraud, Shapiro, through the Debtors, raised over one billion dollars from approximately 10,000 investors as either Noteholders or Unitholders (collectively, "Investors").

2. Those Investors often placed a substantial percentage of their net worth (including savings and retirement accounts) with the Debtors and now stand to lose a significant portion of their investments and to be delayed in the return of the remaining portion. The quality of the remaining years of the Investors' lives will be substantially and adversely affected by the fraud perpetrated by Shapiro.

3. The Defendant here, Kaila Alana Loyola ("Claimant"), is a transgender woman who claims that (i) she was wrongfully terminated by Plaintiffs and, while employed, subjected to abuse by two of her former colleagues, fellow employees of the Plaintiffs, on account of her transgender status, and (ii) Plaintiffs' managerial employees, including Shapiro, did not make reasonable efforts to prevent or end the harassment, and indeed wrongfully terminated Claimant from employment.

4. Claimant alleges she was employed by Plaintiffs from May 4, 2015 through August 5, 2015. Plaintiffs' records are consistent with those dates of employment, a period of approximately 93 days.

5. Plaintiffs are informed and believe, and based thereon allege, that Claimant's duties as an employee of the Plaintiffs involved preparing and processing the very loan documents used to perpetrate the fraud on Investors.

6.	Plaintiffs are unaware to what extent, if at all, Claimant was aware that the documents she was preparing and processing were fraudulent. However, Plaintiffs are informed and believe, and based thereon allege, that Claimant was or ought to have been aware of substantial questions surrounding Debtors' business practices, and thus of her role in advancing those practices, based on the following:

   a. In a complaint she filed in California in November 2015, only three months after her termination and before any state other than Massachusetts had issued a cease and desist order, Claimant alleged that "Woodbridge has been the subject of cease and desist orders from various state courts for selling unregistered securities and/or engaging in fraud in connection with these investments."[3]

   and

   b. On May 4, 2015, the very first day of Claimant's employment, Massachusetts issued an order (to which the Debtors consented), prohibiting the Debtors from, among other things, continuing to do business in that state and fining the Debtors $250,000. The Massachusetts order is notable because it was the first order (of many) sanctioning the Debtors based on their business practices, fining them and prohibiting them from doing business in a particular state.

7.	The purpose of this proceeding is two-fold:

   a. To object to Claim No. 8811 in the amount of $14,000,000 (fourteen million dollars) being asserted by Claimant. The bases for relief include Bankruptcy Code section 502(b)(1).

---

[3] Precisely the same statement is repeated in an amended version of the complaint which is attached to the Claim.

and

    b. To equitably subordinate any allowed Claim that Claimant obtains on the basis that allowing the claim of a former employee who assisted in the preparation of the very documents used to defraud Investors on a *pari passu* basis with the claims of those same Investors, would be inequitable and contrary to the rules of equitable distribution and that subordination is appropriate pursuant to the Bankruptcy Code, including section 510(c), and decisional law.

and

    c. To the extent that the Court does not wholly subordinate any allowed Claim that Claimant obtains, to equitably subordinate any portion of her allowed Claim that represents attorneys' fees or punitive or exemplary damages, on the basis that treating such non-compensatory elements of an allowed claim by a former employee who assisted in the preparation of the very documents used to defraud Investors on a *pari passu* basis with the claims of those same Investors, would be inequitable and contrary to the rules of equitable distribution and that subordination is appropriate pursuant to the Bankruptcy Code, including section 510(c), and decisional law.

## JURISDICTION AND VENUE

8.     The Court has jurisdiction over this action under 28 U.S.C. §§ 157(a) and 1334. This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B) and (C). In any event, the Plaintiffs and, to the extent necessary, all Debtors consent to entry of

01:23588476.3

4

final orders or judgment by the bankruptcy court.  Venue of this adversary proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

9. On December 4, 2017 (the "Petition Date"), the Plaintiffs commenced voluntary cases under chapter 11 of the Bankruptcy Code.  Other of the Debtors also filed voluntary chapter 11 cases either on the Petition Date or within the following four months.

10. Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee or examiner has been appointed in these cases.

11. These cases are being jointly administered for procedural purposes pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

## FIRST CLAIM FOR RELIEF

### Objection to Claims

12. Plaintiffs reallege and incorporate herein Paragraphs 1 through 5, 7.a, and 8 through 11, as if fully set forth.

13. Claimant, as noted in paragraph 7.a, above, filed the Claim on June 18, 2018, a true copy of which is attached hereto as Exhibit A, and by it seeks $14,000,000 for "[d]iscrimination and harassment in violation of California Fair Employment and Housing Act and related [law]."

14. Notably, Claimant was employed for only 93 days by Plaintiffs.  The amount she seeks for wrongful termination and related discrimination and harassment represents the total amount she would have been paid had she been employed by Plaintiffs at her then rate of pay for

01:23588476.3

approximately 385 years. Put another way, the amount Claimant is seeking is substantially in excess of 1,000 times the salary she earned during her brief employment by Plaintiffs.

15. Plaintiffs believe that there are substantial defenses to liability on the Claim, including but not limited to: (i) the individuals who allegedly created a hostile work environment – two sisters who were employed by the Plaintiffs, Lianna and Diana Balayan – were not managerial employees; (ii) Claimant did not make reasonable use of the preventive and corrective measures that Plaintiffs had in place to report, investigate, and put a stop to discrimination and harassment; (iii) Claimant was terminated for legitimate, nondiscriminatory reasons; and (iv) Claimant's alleged damages were not actually caused by Plaintiffs' alleged mistreatment.

16. For purposes of this Objection only, and in order to avoid the cost and length of a trial that would otherwise deal with both liability and damages, Plaintiffs are prepared to concede liability. This concession is designed solely for the purpose of rapid and inexpensive liquidation of the Claim and is not a general concession. In the event that this case is tried in any court or forum other than this Bankruptcy Court (including without limitation any United States District Court or State Court), Plaintiffs fully reserve the right to contest both liability and damages.

17. Plaintiffs are informed and believe, and based thereon allege, that Claimant did not suffer damages relating to her wrongful termination and hostile work environment while employed by Plaintiffs at anything remotely close to $14,000,000, but that her damages from the foregoing are much smaller, including for some or all of the following reasons:

a. She was employed by Plaintiffs for only three months;

b. Even if she had not been terminated in 2015, she would have lost her job no later than the Petition Date such that the wages she could have earned from

        her termination date to the Petition Date – approximately 28 months – would have been substantially less than $100,000;

    c. Claimant's emotional injuries are not attributable to Plaintiffs' alleged misconduct, but rather to past trauma experienced by Claimant prior to her employment with Plaintiffs;

    d. Plaintiffs' liability, if any, should be reduced by the amount of Claimant's recoveries from other parties that contributed to her alleged harms; and

    e. Claimant's claimed damages must be offset by income obtained subsequent to her termination, including from state disability benefits and the wages earned from her current employer.

18. Further, Claimant has sought punitive damages. Because punitive damages will punish neither the individuals who allegedly abused Claimant nor the Debtors' prior equity owners (who were also the supervisors of the allegedly abusing employees), but will instead punish victims of Debtors' fraud, which was advanced by acts of Claimant during her employment by Plaintiffs, this is not an appropriate case for punitive damages. As Bankruptcy Judge Robert Gerber wrote in an opinion in *In re Motors Liquidation Co.*, 2012 WL 10864205, at *11 (Bankr. S.D.N.Y. Aug. 6, 2012):

> [T]he purpose of punitive damages is to punish wrongdoers and deter future wrongful conduct. However, in a bankruptcy setting where the recovery of punitive damages by some creditors depletes recovery of other creditors, courts have regularly exercised their equitable power to disallow or subordinate punitive damage claims. Disallowance of punitive damages claims is particularly appropriate in a liquidating case, including a liquidating chapter 11 case, where there is no future conduct to deter; the people guilty of the misconduct would not be punished for it; and the victims of the punitive damages would in reality be only other, wholly innocent, creditors.
>
> Awarding punitive damages in cases where all unsecured creditors are not receiving full satisfaction of their claims in effect forces the innocent creditors to pay for the debtor's wrongful conduct.

01:23588476.3

19. The preceding is not meant to disparage Claimant or to deny that she was subjected to unfair treatment, but rather to assure that any allowed Claim properly reflects the actual damages suffered by Claimant as the direct and proximate result of misconduct by Plaintiffs and does not award her sums in excess of her actual damages, as that would unfairly affect victims of Debtors' fraud, including defrauded creditors and Investors.[4]

## SECOND CLAIM FOR RELIEF

### Equitable Subordination

20. Plaintiffs reallege and incorporate herein Paragraphs 1 through 19, as if fully set forth.

21. Given the timing of her employment, which commenced on the very same day as Massachusetts (the very first state of many to so act) ordered the Debtors to cease doing business in that state and to pay Massachusetts $250,000, Plaintiffs are informed and believe, and based thereon allege, that Claimant was or should have been aware that the Debtors were engaged in fraud and that her services would advance that fraud.

22. Regardless of the extent to which Claimant was actually aware of Debtors' fraud or that her services would advance that fraud, Claimant's conduct in fact assisted in causing injury to the Debtors' estates and its other defrauded creditors and Investors.

23. Principles of equitable subordination require that any claims asserted by Claimant against the Plaintiffs be equitably subordinated to all other claims against the Debtors.

---

[4] As noted in paragraph 16, any "concession" as to liability is solely made on practical grounds, not as a confession of wrongdoing by the Plaintiffs. The "concession" is designed to enable this matter to be adjudicated rapidly and inexpensively in this Bankruptcy Court. Simply put, the costs to determine liability here will likely exceed the consequences of conceding liability. But this "concession" is inapplicable in any other forum.

01:23588476.3

24. To the extent that the Court does not wholly subordinate any allowed Claim that Claimant obtains, principles of equitable subordination require, at a minimum, that any portion of Claimant's allowed Claim that is not actually compensatory to her, such as attorneys' fees for her lawyers and punitive or exemplary damages, be subordinated to the claims of all other creditors.

25. Equitable subordination as requested herein is consistent with the provisions and purposes of the Bankruptcy Code.

26. As a result of the foregoing, Plaintiffs are entitled to judgment pursuant to Bankruptcy Code section 510(c) equitably subordinating the Claim, in whole or in part (as set out above), that Claimant has asserted against Plaintiffs.

**PRAYER FOR RELIEF**

WHEREFORE, by reason of the foregoing, Plaintiffs request that the Court enter judgment:

1) On the first claim for relief, sustaining the objection to Claim No. 8811, decreeing that Claim No. 8811 be reduced to a reasonable sum according to proof, and directing the Claims' Agent to reduce Claim No. 8811 to such amount;

2) On the second claim for relief, equitably subordinating Claim No. 8811, according to proof and in accordance with principles of equitable subordination and the provisions and purposes of the Bankruptcy Code; and

3) On both claims for relief, for such other and further relief as is just and proper.

*[Remainder of this page left blank]*

01:23588476.3

| | |
|---|---|
| Dated:  August 30, 2018<br>Wilmington, Delaware | */s/ Edmon L. Morton*<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Sean M. Beach (No. 4070)<br>Edmon L. Morton (No. 3856)<br>Michael S. Neiburg (No. 5275)<br>Ian J. Bambrick (No. 5455)<br>Rodney Square, 1000 North King Street<br>Wilmington, Delaware 19801<br>Tel:   (302) 571-6600<br>Fax:  (302) 571-1253<br><br>-and-<br><br>KLEE, TUCHIN, BOGDANOFF & STERN LLP<br>David M. Stern (*pro hac vice*)<br>Whitman L. Holt (*pro hac vice*)<br>Jonathan M. Weiss (*pro hac vice*)<br>1999 Avenue of the Stars, 39th Floor<br>Los Angeles, California 90067<br><br>*Counsel to the Debtors and Debtors in Possession* |